```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF DELAWARE

LAKISHA SHORT,                     :
                                   :
          Plaintiff,               :
                                   :
     v.                            : Civil Action No. 08-106-JJF
                                   :
COMMISSIONER CARL DANBERG,         :
DEPUTY COMMISSIONER THOMAS         :
CARROLL, WARDEN PATRICK RYAN,      :
COLLEEN SHOTZBERGER, and CMS,      :
                                   :
          Defendants.              :
```

Lakisha Short, Pro se Plaintiff.  Delores J. Baylor Women's Correctional, Wilmington, Delaware.

## MEMORANDUM OPINION

October 21, 2008
Wilmington, Delaware

*Joseph J. Farnan Jr.* [signature]

**Farnan, District Judge**

Plaintiff Lakisha Short ("Plaintiff"), an inmate at the Delores J. Baylor Women's Correctional Institution ("BWCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983. She appears <u>pro se</u> and was granted <u>in forma pauperis</u> status pursuant to 28 U.S.C. § 1915. (D.I. 4.)

For the reasons discussed below, the Court will dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff will be allowed to amend the Complaint as to the race and sexual orientation discrimination claim and the medical needs claim.

## I. BACKGROUND

Plaintiff alleges that Defendants Commissioner Carl Danberg ("Danberg"), Deputy Commissioner Thomas Carroll ("Carroll"), Warden Patrick Ryan ("Ryan"), and Supervisor Colleen Shotzberger ("Shotzberger") maintain an official, but unwritten, policy and practice of racial and sexual orientation discrimination in housing, job assignment, and discipline of black lesbian inmates at BWCI. (D.I. 2, ¶¶ 9, 26.) Plaintiff makes complaints regarding the grievance procedure, lack of educational opportunities, prison transfers, placement in administrative segregation, lack of opportunity to exercise, and the lack of programs available for inmates with long sentences. An amendment

to the Complaint alleges a medical needs claim against Correctional Medical Services ("CMS"). (D.I. 19.) Plaintiff alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (D.I. 2, ¶ 23.) She seeks declaratory and injunctive relief as well as compensatory and punitive damages.

**II.　STANDARD OF REVIEW**

When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

In performing its screening function under § 1915(e)(2)(B), the Court applies the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fullman v. Pennsylvania Dep't of Corr., No. 4:07CV-000079, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007) (citing Weiss v. Cooley, 230 F.3d 1027, 1029 (7th Cir. 2000). The Court must accept all factual allegations in a complaint as

true and take them in the light most favorable to Plaintiff. Erickson v. Pardus, -U.S.-, 127 S.Ct. 2197, 2200 (2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, -U.S.-, 127 S.Ct. 1955, 1964 (2007); Fed. R. Civ. P. 8. A complaint does not need detailed factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citations omitted).

The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). Plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. Id. (citing Twombly, 127 S.Ct. at 1965 n.3). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. at

235 (quoting Twombly, 127 S.Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. at 234. Because Plaintiff proceeds pro se, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, -U.S.-, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

## III. ANALYSIS

### A. Statute of Limitations

The Complaint was filed on February 18, 2008.[1] There is a two year statute of limitation period for § 1983 claims. See Del. Code Ann. tit. 10, § 8119; Johnson v. Cullen, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." Id. Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. See Smith v. State, C.A. No. 99-440-JJF,

---

[1] The computation of time for complaints filed by pro se inmates is determined according to the "mailbox rule." The Complaint is deemed filed as of the date it was delivered to prison officials for mailing to the Court. Houston v. Lack, 487 U.S. 266 (1988); Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998); Gibbs v. Decker, 234 F. Supp. 2d 458, 463 (D. Del. 2002). Inasmuch as Plaintiff verified her Complaint on February 18, 2008, this is the earliest date it could have been delivered to prison officials for mailing.

2001 WL 845654, at *2 (D. Del. July 24, 2001). Accordingly, the limitation period began to run on February 18, 2006.[2]

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006); Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1167 (3d Cir. 1986). "[W]here the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, sua sponte dismissal under 28 U.S.C. § 1915 is permissible." Smith v. Delaware County Court, 260 Fed. Appx. 454 (3d Cir. 2008); Wakefield v. Moore, 211 Fed. Appx. 99 (3d Cir. 2006) (citing Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006)).

Plaintiff's "Facts" refer to acts that are barred by the statute of limitations. Paragraph ten alleges that Plaintiff

---

[2]The Third Circuit Court of Appeals has concluded that the statute of limitations expires on the anniversary date of the event in issue. Monkelis v. Mobay Chem., 827 F.2d 937, 938 (3d Cir. 1987). In determining the final date of the limitations period, the method of calculation used is that found in Fed. R. Civ. P. 6(a), at least in non-diversity cases. Id.; Fed. R. Civ. P. 6(a). Rule 6(a) specifically provides that the "date of the act". . . from which the designated period of time begins to run shall not be included" in determining whether suit was brought in a timely manner. Id. It also provides that the last day of the period is included in the computation unless it is a Saturday, Sunday or legal holiday. Id.

remained in an undesirable housing unit forty-five days after her initial review, which occurred on or about April 23, 2004, a time frame clearly barred by the statute of limitations; and paragraph eleven alleges that on March 10, 2005, Ryan and Shotzberger approved the denial of a job request for Plaintiff, an act also barred by the statute of limitations. (D.I. 2, ¶¶ 10, 11.) It is evident from the face of the Complaint that the claims in paragraphs ten and eleven are barred by the two year limitations period. Therefore, the Court will dismiss paragraphs ten and eleven of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### B. Grievances

Plaintiff alleges that there were no responses to grievances she submitted and no action was taken on her appeals. (D.I. 2, ¶¶ 12, 13.) The filing of a prison grievance is a constitutionally protected activity. Robinson v. Taylor, 204 Fed. Appx. 155, 157 (3d Cir. 2006).

Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. Burnside v. Moser, 138 Fed. Appx. 414, 416 (3d Cir. 2005)

(citations omitted)(failure of prison officials to process administrative grievance did not amount to a constitutional violation). Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. Hoover v. Watson, 886 F. Supp. 410, 418-419 (D. Del.), aff'd 74 F.3d 1226 (3d Cir. 1995); see also Burnside v. Moser, 138 Fed. Appx. at 416 (failure of prison counselor to timely provide inmate with prison appeals form was simple negligence that does not rise to the level of a constitutional deprivation); Samuel v. Snyder, Civ. No. 01-722-SLR, 2002 WL 31207190, at *3 (D. Del. Sept. 27, 2002) (dismissing as frivolous inmate's claim that he did not receive a response to his appeal, but instead received an order imposing the sanction that he wished to appeal on the grounds that inmates have no protected liberty or property interests in Department of Correction procedures).

Plaintiff cannot maintain a constitutional claim based upon her perception that her grievances were denied, delayed, not properly processed, investigated, or that the grievance process is inadequate. For the above reasons, the grievance allegations fail to state a claim upon which relief may be granted and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### C. Housing/Classification/Transfer

Plaintiff alleges that she was housed in undesirable units,

either with no reason provided or, for discriminatory reasons. More particularly, she alleges she was placed in pre-hearing detention for four days and remained in an isolation cell when she refused to be housed in Unit 6; placed in administrative segregation in February 2006 for forty-five days after refusing to leave the isolation cell; Carroll, Ryan, and Shotzberger agreed and approved an interstate transfer without her knowledge or request and Danberg confirmed the transfer; and she was placed in administrative segregation in May 2007 without receiving notice or a hearing regarding her change in status. (D.I. 2, ¶ 12, 13, 17, 18.)

Initially, the Court notes that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Also, it has been determined that the transfer of a prisoner from one classification is unprotected by "'the Due Process Clause in and of itself,"' even though the change in status involves a significant modification in conditions of confinement. Hewitt v. Helms, 459 U.S. 460, 468 (1983) (citation omitted); Moody v. Daggett, 429 U.S. 78 (1976). Moreover, neither Delaware law nor Delaware Department of Correction ("DOC") regulations create a liberty interest in a prisoner's classification within an institution. See Del. Code

Ann. tit. 11, § 6529(e). "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" Hewitt, 459 U.S. at 468 (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)).

In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. See Sandin v. Conner, 515 U.S. 472 (1995). Protected liberty interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 484 (internal citations omitted).

Plaintiff specifically alleges that in 2006 she was placed in an isolation cell for four days and in administrative segregation for forty-five days and in 2007 placed in administrative segregation without notice of her change of status. In deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the

disciplinary confinement and the conditions of that confinement in relation to other prison conditions. Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). The Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin. See Young v. Beard, 227 Fed. Appx. 138 (3d Cir. 2007). The allegations in the Complaint do not reflect an amount of time that implicates a protected liberty interest. The Court concludes that Plaintiff's placement in isolation and administration segregation did not violate her due process rights, and as a result, cannot be viewed as falling outside the scope of "the sentence imposed upon [her] [or] otherwise violative of the Constitution."

Finally, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. Walls v. Taylor, No. 489,2003, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing Brathwaite v. State, No. 169, 2003 (Del. Dec. 29, 2003). The United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. Olim v. Wakinekona, 461 U.S. 238, 251(1983). Based upon the foregoing,

Plaintiff's transfer claim has no arguable basis in law or in fact.

For the above reasons, the Court will dismiss the foregoing claims for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### D. Discrimination

Exhibits to the Complaint indicate that Plaintiff and inmate White were punished as a result of their involvement in a relationship. Plaintiff alleges that although they had the same status, she and White were treated differently. For example: Plaintiff was placed in isolation, White was housed in a regular room; Plaintiff had only a state issued blanket, White had all of her belongings; and Plaintiff had no access to commissary, White was allowed commissary and all other benefits. (D.I. 2, ¶ 13, ex. L.) Plaintiff also alleges that, while housed in Unit 8, she had less privileges than inmates housed on death row. (D.I. 2, ¶ 19.) She alleges that there are no programs or activities for inmates with long sentences and that most employment opportunities are provided to inmates with short sentences. (Id. at ¶ 20.) Finally, in her prayer for relief, Plaintiff alleges that Defendants Danberg, Carroll, Ryan, and Shotzberger "discriminat[e] in the housing and discipline of black lesbian prisoners" at the BWCI. (D.I. 2, 26.)

To state a claim under the Equal Protection Clause, Plaintiff must allege that (1) she is a member of a protected class and (2) she was treated differently from similarly situated inmates. Saunders v. Horn, 959 F. Supp. 689, 696 (E.D. Pa. 1996); see also City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (noting that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike"); Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983) ("To establish a violation of the Equal Protection Clause, a plaintiff must show that [an] allegedly offensive categorization invidiously discriminates against [a] disfavored group."); Oliveira v. Township of Irvington, 41 Fed. Appx. 555, 559 (3d Cir. 2002). Plaintiff may satisfy the second element by "naming similarly situated members of an unprotected class who were [treatly differently] or, in some cases, by submitting statistical evidence of bias." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002) (citations omitted).

Plaintiff alleges discrimination based upon race and sexual orientation. However, the Court cannot discern from her allegations whether the individuals with whom she alleges dissimilar treatment, are similarly situated members of unprotected classes or whether they, too, are members of Plaintiff's protected class. See Livingston v. Borough of McKees Rocks, 223 Fed. Appx. 84, 88 (3d Cir. 2007) (affirming grant of

summary judgment on equal protection claim for lack of evidence that similarly situated members of unprotected class were not subjected to same adverse treatment). Accordingly, Plaintiff fails to state a claim for an equal protection violation. See Saunders, 959 F. Supp. at 696 (finding that prisoner had not stated an equal protection claim where he did not state that he was treated differently from other inmates with similar health problems). For the above reasons, the Court will dismiss without prejudice the discrimination claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiff will be given leave to amend this claim.

**E. Employment**

The Complaint contains numerous allegations regarding prison jobs held by Plaintiff and removal from those jobs by Defendants Ryan and Shotzberger. (D.I. 2, ¶¶ 12, 15.) Prisoners, however, have no entitlement to a specific job, or even to any job. James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989). Indeed, it well established that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a property interest under the Fourteenth Amendment. Id.; see also Brian v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) (inmates expectation of keeping job is not a property interest entitled to due process protection); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980) (prisoner's expectation of keeping prison job does not amount to

a property interest entitled to due process protection); <u>Adams v. James</u>, 784 F.2d 1077, 1079 (11th Cir. 1986) (assignment to job as law clerk does not invest inmate with a property interest in continuation as such); <u>Ingram v. Papalia</u>, 804 F.2d 595, 596 (10th Cir. 1986) (Constitution does not create a property interest in prison employment); <u>Flittie v. Solem</u>, 827 F.2d 276, 279 (8th Cir. 1987) (inmates have no constitutional right to be assigned a particular job). For the above reasons, the Court will dismiss the employment claims as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**F. Conditions of Confinement/Exercise**

Plaintiff is housed in Unit 8. She alleges that Ryan does not allow inmates in Unit 8 to participate in any services or activities outside the unit, she is denied adequate exercise, and she is denied art supplies. (D.I. 2, ¶ 19.) With regard to exercise, Plaintiff submitted a grievance on January 7, 2008, complaining that, because the weather prohibited outside yard, she has been unable to have adequate exercise for over sixty minutes per day. (D.I. 2, ex. CC.)

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. <u>See</u> <u>Hudson</u>

v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir.2001).

The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988)(quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D. Pa. 1984). However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to

atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199. Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Plaintiff's claims do not rise to the level of constitutional violations. It is evident in reading the Complaint that she is allowed to participate in services or activities offered inside Unit 8, and she is allowed to exercise outside, weather permitting. Also, the allegations infer that she is provided opportunities to exercise inside. The allegation that she is denied art supplies is simply frivolous. For the above reasons, the Court will dismiss the conditions of confinement/exercise claims as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### G. Education, Rehabilitative Programs

Plaintiff complains that she enrolled in a correspondence course, she is unable to pay for, because BWCI does not provide her opportunities for education. (D.I. 2, ¶ 16.) She further alleges that she contacted Ryan and Shotzberger on several occasions regarding their lack of concern for her rehabilitation, but received no responses. (D.I. 2, ¶ 14.) She alleges that there are no programs or activities for inmates with long

sentences. (Id. at ¶ 20.)

Unfortunately for Plaintiff, prisoners have no constitutional right to an education. Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989); Risso v. Dawson, 778 F.2d 527, 530-31 (9th Cir. 1985); Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982); Longendorfer v. Roth, No. 92-2180, 1992 WL 95919, at *1 (E.D. Pa. Apr. 23, 1992). Moreover, it is well-established that those individuals serving criminal sentences have no constitutional right to rehabilitation while in prison. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (inmate has no legitimate statutory or constitutional entitlement in eligibility for rehabilitative program sufficient to invoke due process when eligibility decision is discretionary with prison officials); Torres Garcia v. Puerto Rico, 402 F. Supp. 2d 373, 383 (D.P.R. 2005)(inmates have no constitutional interest in participation in a rehabilitation program); Pabon v. McIntosh, 546 F. Supp. 1328, 1339 (E.D. Pa. 1982) (the failure of prison authorities to afford rehabilitative programs in prison is constitutionally unobjectionable). Accordingly, the Court will dismiss the education/rehabilitation claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**H. Medical Needs**

The Amended Complaint adds CMS as a Defendant. (D.I. 19.) Plaintiff alleges that CMS houses mentally ill inmates in

-17-

segregation or supermax units; neglects to transfer mentally ill inmates to an appropriate facility causing significant disruption to the general population; fails to provide an adequate number of qualified mental health staff for inmates in general population; exposes general population inmates to environmental health and safety risks; and has a rule denying "prisoners less fortunate financially 'comfort medication.'" (Id.) Plaintiff alleges that she has been directly and indirectly effected by the environment which has become toxic to her mental health.

In order to establish that CMS is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The Court has thoroughly reviewed Plaintiff's Complaint and Amendment. The allegations do not indicate when the alleged constitutional violations took place. A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d

-18-

347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)). Additionally, the only allegation that references Plaintiff is the general claim that she has been directly and indirectly effected by the environment which has become toxic to her mental health. The other allegations are made generally on behalf of all the inmates at BWCI.

As it now stands, the Complaint and Amendment fail to state a claim against CMS. For the above reasons, the Court will dismiss without prejudice the medical needs claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Plaintiff will be given leave to amend this claim.

### IV. CONCLUSION

For the reasons discussed, the Court will dismiss the Complaint as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The Court will allow Plaintiff to amend the Complaint only as to the issues of discrimination against Ryan and Shotzberger and the medical needs against CMS. An appropriate Order will be entered.